916 F.2d 890
 23 Collier Bankr.Cas.2d 1566, 20 Bankr.Ct.Dec. 1884,
Bankr. L. Rep. P 73,665
 Stanley G. MAKOROFF, Trustee for Guterl Special Steel Corporation
v.
The CITY OF LOCKPORT, NEW YORK, The School District of
Lockport, New York and County of Niagara, New York.
Appeal of COUNTY OF NIAGARA, NEW YORK.
 Nos. 90-3158, 90-3159.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 20, 1990.
Decided Oct. 19, 1990.
 
 David R. Wendt (argued), John F. Batt (argued), Allen D. Miskell and Thomas H. Brandt, City of Lockport Corp. Counsel, Lockport, N.Y., for appellant.
 James K. White (argued), Charles A. Moster, Gene V. Del Tredici, U.S. Dept. of Commerce, Office of Gen. Counsel, Washington, D.C., for appellee.
 Before STAPLETON, COWEN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 COWEN, Circuit Judge.
 
 
 1
 This bankruptcy appeal raises the question whether the creation of post-petition liens for unpaid city and county real property taxes on a bankrupt estate violates the automatic stay provision of 11 U.S.C. Sec. 362(a)(4) (1979). The district court held it does because the automatic stay prohibits the creation of a lien after the bankruptcy petition, and there was no exception which took this case outside the application of the automatic stay. 111 B.R. 107. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. Because we agree with the district court's conclusion that the liens in question were created after the bankruptcy petition, and the city and county liens do not relate back to a pre-petition interest in the debtor's property, we will affirm.
 
 I.
 
 2
 Debtor, Guterl Special Steel Corporation ("Guterl"), owned property in the City of Lockport (the "City"), County of Niagara (the "County"), in the State of New York. In 1981, Guterl gave mortgages to two banks each in the amount of $7.5 million. Both mortgages were duly recorded. The mortgages were guaranteed by economic development agencies of the United States for 90% of the outstanding principal and interest; one by the Economic Development Administration of the United States ("EDA"), and the other by the Farmers Home Administration ("FmHA"), both of whom are represented by the United States, the Appellee in this case.
 
 
 3
 On August 9, 1982, Guterl filed a Chapter 11 petition in bankruptcy in the Western District of Pennsylvania. At filing, Guterl was current on all taxes. After filing, however, Guterl failed to pay certain city, school and county taxes on its real property. The City and County, Appellants in this case, have asserted liens on Guterl's property superior to the recorded mortgages in order to secure payment of the taxes owed to them.
 
 
 4
 On August 26, 1983, EDA paid 90% of the balance due on the outstanding note it had guaranteed and was assigned all of the bank's right, title and interest in Guterl's collateral. While the record does not indicate what occurred to the note that FmHA guaranteed, we may assume for the purpose of this appeal that at some point, FmHA paid 90% of the balance due on the note it had guaranteed in return for an assignment of the bank's right, title and interest in the collateral. In November, 1983, the bankruptcy court ordered Guterl to liquidate the collateral securing the EDA and FmHA mortgages. In March, 1984, the land was sold in a public sale for $9.5 million, $549,550 of which Guterl has deposited in an escrow account pending resolution of this dispute. This appeal concerns the right to the money in that escrow account.
 
 
 5
 The United States, representing the EDA and the FmHA, claims that it has a first priority security interest in the proceeds from the sale of Guterl's property (and therefore is entitled to the money in the escrow account) because the EDA and FmHA hold notes secured by duly recorded mortgages on the property. On the other hand, the City and County of Niagara claim that they are entitled to the proceeds because they hold super-priority tax liens on the property for unpaid city, school and county taxes.
 
 
 6
 The trustee in bankruptcy initiated this proceeding under Rule 7001 of the Bankruptcy Rules to determine priority of liens on the debtor's property in order to adjudicate the competing rights to the proceeds in the escrow account. The bankruptcy court held that the city and county tax liens were null and void because the liens had been created after Guterl's petition in bankruptcy, in violation of the automatic stay, 11 U.S.C. Sec. 362(a)(4). The district court affirmed the holding of the bankruptcy court and this appeal followed.
 
 II.
 
 7
 The automatic stay provision of the bankruptcy code, 11 U.S.C. Sec. 362, is "one of the fundamental debtor protections provided by the bankruptcy laws." H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296. It protects creditors by giving them equal treatment and is an aid to debtors by giving them a "breathing spell." See H & H Beverage Distribs. v. Department of Revenue, 850 F.2d 165, 166 (3d Cir.), cert. denied, 488 U.S. 994, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988).
 
 
 8
 Unless an exception applies, the automatic stay prohibits "any act to create, perfect, or enforce any lien against the property of an estate." 11 U.S.C. Sec. 362(a)(4). Section 362(b)(3) creates an exception to the automatic stay and allows "any act to perfect an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title." 11 U.S.C. Sec. 362(b)(3) (1979). Section 546(b), in turn, provides that the rights and powers of the trustee under section 545 to avoid statutory liens, see sections 545(1)(A) and 545(2), are subject to "any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." 11 U.S.C. Sec. 546(b) (1979).
 
 
 9
 The legislative history of this provision explains, "if an interest holder against whom the trustee would have rights still has, under applicable nonbankruptcy law, and as of the date of the petition, the opportunity to perfect his lien against an intervening interest holder, then he may perfect his interest against the trustee." H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6327; S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5872. The legislative history also indicates that "generally applicable law" means "provisions of applicable law that apply both in bankruptcy cases and outside bankruptcy cases," and warns that "[the phrase] is not designed too [sic] give the States an opportunity to enact disguised priorities in the form of liens that apply only in bankruptcy cases." Id.
 
 
 10
 In essence, these provisions establish an exception to the bar of the automatic stay where a creditor has a pre-petition interest in property that can be perfected under state law within a given time. The creditor, in that circumstance, does not lose his preferred status merely because he does not perfect his interest until after the debtor has filed for bankruptcy. See In re Parr Meadows Racing Assoc., Inc., 880 F.2d 1540, 1546 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).
 
 
 11
 The paradigm section 546(b) case would arise in a state which has adopted the Uniform Commercial Code ("U.C.C."). Under various sections of the U.C.C., a perfected security interest relates back to either the filing of a financing statement or the date that the security interest attaches. See, e.g., H.R.Rep. No. 595, 95th Cong., 1st Sess. 371-72 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6327-28; S.Rep. No. 989, 95th Cong., 2d Sess. 86-87 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5872-73.[1] Where a state law allows a creditor to perfect his security interest within a certain period of time after the security interest attaches, section 546(b) allows the creditor to complete the steps required under state law for perfection. Without section 546(b), a creditor could not perfect his security interest without violating the automatic stay, even if all that remained was a ministerial act.
 
 
 12
 The purpose of this exception to the rule of the automatic stay is to "protect, in spite of the surprise intervention of [the] bankruptcy petition, those whom State law protects" by allowing them to perfect an interest they obtained before the bankruptcy proceedings began. H.R.Rep. No. 595, 95th Cong., 1st Sess. 371 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6327; S.Rep. No. 989, 95th Cong., 2d Sess. 86 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5872; see also Parr Meadows, 880 F.2d at 1546.
 
 
 13
 The question which we must consider is whether the city and county real estate taxes are analogous to liens that can be perfected post-petition and relate back to a pre-petition period. If the city and county tax liens date back to a pre-petition interest in debtor's property, there would be no violation of the automatic stay in this case, even if the tax liens were perfected post-petition. The statutory liens of the City and County would therefore "trump" even the prior recorded mortgages of the EDA and the FmHA.
 
 III.
 
 14
 We begin our analysis by examining the taxing statutes which give rise to the city and county liens.
 
 
 15
 Section 271 of Lockport's City Charter provides:
 
 
 16
 All general city taxes hereinafter levied in said city shall be a lien upon the lands on which they are assessed, for ten years from the first publication of the notice of such tax or assessment by the treasurer, and shall have priority in the order of time in which they become liens.... Such liens shall be superior to any mortgage, judgment or other lien of any nature affecting said premises except state and county taxes and liens in favor of the United States.
 
 
 17
 On January 4, 1983, the City published the notice for the 1983 City tax. On January 3, 1984, the City published the notice for the 1984 City tax.
 
 
 18
 Under sections 217 and 266 of Lockport's City Charter, water rents are also liens on the real estate where consumed or supplied and are added to the yearly city tax bill.
 
 
 19
 Lockport's school tax is authorized by section 1306 of New York's Real Property Tax Law. Section 1312(1) of that law states:
 
 
 20
 School taxes shall become a lien as of the date and hour of the confirmation or final adoption of the school tax roll by the school authorities. Unpaid interest shall be included in and deemed part of the unpaid tax. Such taxes including such unpaid interest shall remain a lien until paid.
 
 
 21
 N.Y. Real Prop. Tax Law Sec. 1312(1) (McKinney's 1989). The City is directed by statute to collect unpaid school taxes in the same manner as unpaid city taxes. If school taxes remain unpaid, the City must pay the sum to the school district and assume collection responsibilities. On September 13, 1982, the School District confirmed and adopted the school tax roll for 1982-83. On September 1, 1983, it confirmed and adopted the school tax roll for 1983-84.
 
 
 22
 The County levies its taxes under the authority of section 900(1) of the New York Real Property Tax Law, which provides:
 
 
 23
 Not later than the thirty-first day of December in each year, the board of supervisors of each county shall levy the taxes for the county upon the basis of the full valuation of the taxable real property determined in accordance with title one or title two of article eight of this chapter and shall enter in a separate column on the assessment roll of each city and town opposite the assessment of each parcel of real property, the amount to be paid as a tax thereon.
 
 
 24
 N.Y. Real Prop. Tax Law Sec. 900(1) (McKinney's 1989). On December 21, 1982, the County adopted the county taxes for 1983 by resolution. On December 20, 1983, the County passed a similar resolution adopting county taxes for 1984.
 
 IV.
 
 25
 Based on these taxing statutes, the City and County argue that they did not violate the automatic stay in bankruptcy by assessing taxes against Guterl after it filed its petition under Chapter 11 on August 9, 1982, although all steps to assess the taxes were taken after that date. The City and County contend that they did not violate the bar of the automatic stay because their assessments of city, school and county taxes fall within the exception of section 546(b) to the automatic stay which allows a creditor to perfect liens post-petition that relate back to a pre-petition interest in a debtor's property. The pre-petition "interest" that the City and County claim to have does not arise from any taxing statute. Rather, their "interest" is the interest that sovereign powers have over all property within their jurisdiction. In essence, the City and County ask us to find that they have an ever-present interest in real property located within their jurisdiction. In support of this request, they refer us to Maryland Nat'l Bank v. Mayor of Baltimore, 723 F.2d 1138, 1142-43 (4th Cir.1983), which held that the imposition of a property tax by the State of Maryland pursuant to its taxing statutes was the last step required to perfect the State's longstanding interest in real property located within its jurisdiction. On that basis, the Maryland court allowed a local government to attach a super-priority tax lien to real property after the debtor/property-owner filed its petition in bankruptcy. The court reasoned that the local government had a pre-petition "interest" in property which it merely perfected post-petition under 11 U.S.C. Sec. 546(b). We have previously had occasion to consider this view. See Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 85-86 (3d Cir.1989). In Equibank, we declined to adopt the argument that a state has an ever-present interest in property which it can perfect post-petition under section 546(b).
 
 
 26
 While it may be true in the abstract that a state has an ever-present interest in all property within its jurisdiction, section 546(b) requires something more. Section 546(b) provides that the rights and powers of the trustee under section 545 to avoid statutory liens are subject to "any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." 11 U.S.C. Sec. 546(b). We read this as requiring that the "generally applicable law" permit (i) perfection, (ii) of an interest in property, (iii) to be effective against an entity that acquires rights in such property before the date of perfection. While the laws in question permit perfection of the City's and County's interest in the debtor's property, we do not believe that the City or County possessed that interest before the date of bankruptcy.
 
 
 27
 Although the City and County may have an ever-present expectation of collecting taxes on all property within their jurisdiction, they do not have a property interest in a particular piece of real estate until they take the affirmative acts necessary to fix the amount of the tax due and to acquire a lien to the extent of that amount. For instance, city taxes do not become a lien until notice of a tax assessment has been published. See section 271 of Lockport's City Charter. With respect to city taxes in 1983, this occurred on January 4, 1983; and with respect to 1984, on January 3, 1984. Guterl petitioned for protection in bankruptcy on August 9, 1982, long before the City had acquired an interest in Guterl's property for the 1983 or 1984 taxes. The same is true of all the other city and county taxes which are at issue. The only assessment which even comes close is the assessment for School Board taxes in 1982-83, where the City School District acquired its interest on September 13, 1982, just one month after Guterl's bankruptcy petition, when it confirmed and adopted the school tax roll as required N.Y. Real Prop. Tax Law Sec. 1312(1).
 
 
 28
 It is only when the affirmative acts prescribed by statute are taken that the City or County acquires an interest in the property for the purpose of satisfying tax obligations. Since the affirmative acts all occurred after the bankruptcy, neither the City nor County acquired an interest in property pre-petition which they perfected post-petition. They therefore did not fall within the exception of section 546(b) to the automatic stay.
 
 V.
 
 29
 The City and County make an alternative argument that their "interest" in Guterl's property attaches on the "tax status date" each year. If the City and County had an interest in Guterl's property which attached on the tax status date, post-petition acts to assess outstanding taxes would be acts to perfect a pre-petition interest in property and would fall within the exception to the automatic stay of 11 U.S.C. Sec. 546(b), provided that the tax status date was before August 9, 1982.
 
 
 30
 In the State of New York, the taxable status of real property is determined according to its condition and ownership as of the taxable status date each year. See N.Y. Real Prop. Tax Law Sec. 302 (McKinney's 1984).[2] At all times relevant to this action, the taxable status date for property in cities was May 1st of every year. See N.Y. Real Prop. Tax Law Sec. 302(1).[3] May 1st is also the taxable status date for property in school districts. N.Y. Real Prop. Tax Law Sec. 302(2) (McKinney's 1984) and Sec. 1302(1) (McKinney's 1989). We will assume that May 1st is the taxable status date for property within the County's jurisdiction.[4] Therefore, the taxable status dates for the 1983 city taxes and 1983 county taxes was May 1, 1982, which falls before the date of the petition, August 9, 1982. Similarly, one or both of the taxable status dates for the 1982-83 and 1983-84 school district taxes fall before the date of the bankruptcy petition. The City and County argue that their interests in Guterl's property attached on this date and that they perfected their interests in accordance with section 546(b) by taking various ministerial steps after the petition was filed. As authority for this approach, the City and County refer us to Parr Meadows, 880 F.2d at 1546.
 
 
 31
 We note, however, that the New York statutes in question make no mention of "relation back" to the taxable status date. Their plain language states that the liens are created on a certain date (not the tax status date), after certain acts are taken. Parr Meadows addressed a similar question of New York law involving a contest between local taxing authorities and several secured creditors. There, the Second Circuit held that the County's "interest" in the contested property arose on the tax status date. Id. at 1546-47.
 
 
 32
 Although we agree that the value of property is established each year on the tax status date, we decline to adopt the view of our sister circuit that local taxing authorities acquire an interest in the subject property on the tax status date that is sufficient to meet the requirements of section 546(b). Section 546(b) requires in no uncertain terms that the City and County acquire an interest in the property before the date of bankruptcy.
 
 
 33
 The tax status date merely represents a date when the identity of the taxpayer and the value of the property are established. General Elec. Co. v. Macejka, 117 A.D.2d 896, 498 N.Y.S.2d 905 (1986); Adirondack Mountain Reserve v. Board of Assessors, 99 A.D.2d 600, 471 N.Y.S.2d 703 aff'd, 64 N.Y.2d 727, 485 N.Y.S.2d 744, 475 N.E.2d 115 (1984). Litigation over the tax status date in New York has centered on changes in the value of the property between the tax status date and the date on which taxes are actually assessed; either because the property has been destroyed and is worth less at the time the tax is assessed, 23 Op. State Compt. 375 (1967); 19 Op. State Compt. 11 (1963), or because it has been improved and is worth more, Roosevelt Nassau Operating Corp. v. Board of Assessors, 68 Misc.2d 183, 326 N.Y.S.2d 628 (Sup.Ct.1970), aff'd, 41 A.D.2d 647, 340 N.Y.S.2d 871 (1973). We believe that the tax status date is an arbitrary date chosen solely for ease in tax administration. Immediately following that date, the taxing entity still possessed no more than an expectation that taxes will be collected with respect to a particular property. Just as we declined in Equibank to hold that such an expectation constitutes an "interest in property," we similarly decline to so hold here. Calling such an expectation an "interest in property" before the amount of the tax is established and a perfectible lien created, stretches the scope of that phrase far beyond its commonly understood meaning. Rather we conclude that the City or County acquires an "interest in property" only when it has performed the statutory acts necessary to give rise to a perfectible lien. Here, each of those acts was performed after Guterl filed its petition in bankruptcy. Accordingly, neither the City nor the County falls within the section 546(b) exception to the automatic stay.
 
 VI.
 
 34
 We hold that the City and County acquired their interest in Guterl's property each year when they took the steps required by statute to obtain a perfectible lien on that property. Because these steps all occurred after Guterl's bankruptcy petition, the assessment of city and county taxes violated the automatic stay of 11 U.S.C. Sec. 362(a)(4). The judgment of the district court will be affirmed in all respects.
 
 
 35
 WEIS, Circuit Judge, concurring and dissenting.
 
 
 36
 I dissent from the part of the majority ruling that denies recognition for the tax claims for the year 1982-83. The central issues as to those claims, the interpretation of New York State law and its correlation with the Bankruptcy Code, were decided favorably to local governments by the Court of Appeals for the Second Circuit in In re Parr Meadows Racing Ass'n., Inc., 880 F.2d 1540 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990). In my view, critical considerations of judicial administration and consistent application of federal law require this Court to defer to the holding in Parr Meadows.
 
 
 37
 As the majority explains, an exception to the automatic stay provision, 11 U.S.C. Sec. 362(a)(4), is provided by 11 U.S.C. Sec. 546(b). The latter proviso allows perfection, after the automatic stay provision has been triggered, by operation of "any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection." To be specific, in this case the issue is whether the local governments had "an interest in property" before August 9, 1982, the date the petition in bankruptcy was filed. The majority answers in the negative, despite the holding in Parr Meadows which would dictate a contrary result.
 
 
 38
 The majority recognizes that the reference in section 546(b) to "any generally applicable law" calls for an interpretation of the New York statutes granting taxation power to local governments. The Parr Meadows Court undertook that task and, after scrutinizing the legislation and state case law, held that the county acquired an "interest" on the "tax status" date (in that instance, June 1, 1979), twelve days before the bankruptcy petition was filed. 880 F.2d at 1548. That was the Court's holding even though the "lien" was not "perfected," according to the tax statute, until December 1, 1979. Id.
 
 
 39
 According to the Court, "All assessment of property occurs as of that date [tax status date], and from that time forward, the county has a real and identifiable interest in the property which cannot be erased or altered by subsequent events." Id. The local government uses the tax status date as the reference point for determining whether the property is taxable and, if so, its valuation. That value is the basis for all taxes due for the year and may not be altered, even though the use or condition of the property may change dramatically before the date the taxes are actually assessed. Spiegel v. Bd. of Assessors, 555 N.Y.S.2d 811, 812 (App.Div.1990). The purpose of this hard and fast rule is to achieve "stability and certainty in the tax structure" because "budgetary requirements ... are predicated on the assessment roll." Id.
 
 
 40
 The factual scenario in Parr Meadows presented precisely the same legal issues as in the appeal presently before us. The majority, however, disagrees with the Parr Meadows opinion on the ground that the New York tax statutes do not mention a "relation back" to the tax status date and that the "liens" are not created until December 1st of each year. In support of this conclusion the majority cites Equibank N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80 (3d Cir.1989). This reliance is puzzling because in Equibank the Court was applying the tax law of West Virginia, not New York. Id. at 85-86.
 
 
 41
 It is pertinent to note at this point that section 546(b) does not use the word "lien," but requires the acquisition of an "interest" before the bankruptcy petition was filed. Parr Meadows recognized the distinction between "interest" and "lien" and commented that the attachment of a lien was merely one of several steps to be taken "towards the completion of the taxation process and the perfection of the county's interest in the property." Parr Meadows, 880 F.2d at 1547.
 
 
 42
 Any doubt that the Parr Meadows appellate Court was aware of the "relation back" issue, is dispelled by reviewing the opinion of the district court from which the appeal was taken. In denying the application of section 546(b) to the 1979-80 taxes, the Parr Meadows district court observed, "[n]oticeably absent from this provision [the state tax statute] is any language providing that such tax lien will be deemed perfected as of a date earlier than the date the taxes become due and payable. The most reasonable interpretation of the Suffolk County Tax Act is that it creates a tax lien as of the date the property taxes are due, and that that lien is also automatically perfected as of the date the taxes become due." In re Parr Meadows Racing Ass'n., Inc., 92 B.R. 30, 34 (E.D.N.Y.1988). The district court then proceeded to discuss legislative history and other bankruptcy courts' decisions.
 
 
 43
 The Court of Appeals reversed the district court holding and stated, "contrary to the holdings in the district court and the bankruptcy courts, the lien for the 1979-80 tax years is also valid." Parr Meadows, 880 F.2d at 1548. "[W]e are satisfied that, under New York tax law, the county did have an interest in the racetrack property before the taxes thereon actually became due and payable and the lien attached." Id. at 1546. The majority here espouses the same view of the New York statute that the district court adopted in Parr Meadows and Court of Appeals rejected.
 
 
 44
 The majority's refusal to accept Parr Meadows holding on the "relation back" factor is a flat disagreement on the interpretation of state law. Because New York is within the geographic boundaries of the Second Circuit, I willingly accept the fact that the Court of Appeals for that circuit has greater familiarity with the law of that state than does our court. Certainly in the event of doubt, deference is due the Second Circuit's reading of local law.
 
 
 45
 The Supreme Court generally accepts interpretations of state law by Courts of Appeals. "Normally, however, we defer to the construction of a state statute given it by the lower federal courts. We do so ... to reflect our belief that district courts and courts of appeal are better schooled in and more able to interpret the laws of their respective States." Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 499-500, 105 S.Ct. 2794, 2799-2800, 86 L.Ed.2d 394 (1985); see also Frisby v. Schultz 487 U.S. 474, 482, 108 S.Ct. 2495, 2500-01, 101 L.Ed.2d 420 (1988).
 
 
 46
 I see no reason why a similar practice of deference should not be followed by the Courts of Appeals as to other Courts of Appeals. It is cause for serious concern when Courts of Appeals deliberately differ on interpretations of federal law, an area in which they are equally competent. See Report of the Federal Courts Study Committee 124-25 (1990). To disagree on questions of state law with courts which have greater familiarity with the pertinent statutes has even less to commend it. It is surely anomalous that Courts of Appeals which extend deference to interpretations of law by administrative agencies do not do so to sister appellate courts created under Article III to decide legal issues. See Grocery Town Market, Inc. v. United States, 848 F.2d 392, 396 (3d Cir.1988) ("it is well settled that the Secretary's interpretation of a statute he is charged with enforcing is entitled to substantial deference"); Smith v. Fidelity Consumer Discount Co., 898 F.2d 907, 914 (3d Cir.1990) ("an agency's 'interpretation of a statute [it] is charged with enforcing is entitled to substantial deference' ... [w]e are thus bound to give deference to this permissible interpretation").
 
 
 47
 The Bankruptcy Code is national law and should be applied uniformly by the federal courts. When Congress wished to allow variation dependent on state law, it made that point specifically. It did so here to the extent of incorporating state law into section 546(b). That, however, does not mean that Congress envisioned disparity in the interpretation of an identical state statute by various federal courts.
 
 
 48
 This court's failure to defer to the Parr Meadows holding means that municipalities and counties in New York governed by the same state statutes are treated differently depending on the location of the bankruptcy court in which the proceeding is filed. This result frustrates Congress' intent to have the Bankruptcy Code interpreted in the same way in all parts of the country. I would therefore follow the holding of the Court of Appeals in the Parr Meadows case and reverse the judgment of the district court insofar as it affects taxes for the year 1982-83.
 
 
 
 [1]
 Under U.C.C. Sec. 9-301(2), for example, a secured creditor may perfect a purchase-money security interest within ten days after the debtor has come into possession of the collateral, even if the creditor has not previously filed a financing statement. Once the secured creditor's interest is perfected by filing, his priority relates back to the date when his security interest attached, provided that filing occurs within ten days of attachment. Accordingly, the purchase-money security interest thus perfected will defeat a non-purchase-money security interest that was perfected after the debtor took possession of the purchase-money collateral (assuming that the non-purchase-money security interest does not itself relate back to a time before the debtor took possession of the purchase-money collateral)
 Under section 546(b), perfection of a purchase-money security interest under U.C.C. Sec. 9-301(2) would defeat a hypothetical judicial lien creditor on the date of the petition in bankruptcy. In other words, the automatic stay under section 362(b)(3) does not forbid the creditor from taking steps to perfect a purchase-money security interest after the petition is filed. Such a perfection of a lien is not considered the creation of a lien under the U.C.C.H.R.Rep. No. 595, 95th Cong., 1st Sess. 371-72 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6327-28; S.Rep. No. 989, 95th Cong., 2d Sess. 86-87 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5872-73.
 
 
 [2]
 Section 302(1) was amended in 1986, changing the tax status date to March 1st for cities. Because the amendment to section 302(1) is not relevant to this case, we have cited to and quoted from the version of section 302(1) in effect at the time the events giving rise to this case occurred. In any event, the material elements of section 302(1) were not changed by the 1986 amendment
 
 
 [3]
 The taxable status of real property in cities and towns shall be determined annually as of the first day of May. All real property shall be assessed in the city or town in which it is situated according to its condition and ownership as of such date. The taxable status of real property in a city or town not subject to the provisions of this section shall be determined as of the date provided by law applicable to such city or town, or if not so provided, then as of the date the assessment roll is completed and filed prior to the hearing of complaints in connection therewith. The date of taxable status of the real property contained on any assessment roll shall be imprinted or otherwise indicated at the top of the first page of each volume of such roll
 N.Y. Real Prop. Tax Law Sec. 302(1) (McKinney's 1984).
 
 
 [4]
 Section 302 of the N.Y. Real Prop. Tax Law fixes the taxable status date for cities, towns, school districts and villages, but not counties. The County does not address this issue in its brief. We will assume for the limited purpose of this appeal that the County in this case has the tax status date set by section 302