In the Matter of the RAILWAY REORGANIZATION ESTATE, INC., (f/k/a Delaware and Hudson Railway Company), a Delaware Corporation, Debtor.

Francis P. DiCELLO, as Trustee of the Railway Reorganization Estate, Inc. (f/k/a Delaware and Hudson Railway Company), Plaintiff,

v.

UNITED STATES of America, et al., Defendants.

Bankruptcy No. 88–342.
Adv. No. 91–46.

United States Bankruptcy Court, D, Delaware.

Oct. 28, 1991.

Arthur B. Vieregg, Jr., Anthony W. Hawks, Washington, D.C., Eduard F. von Wettberg, III, Joanne B. Wills, Wilmington, Del., for Trustee.

S. Mark Lindsey, G. Joseph King, Office of Chief Counsel, Federal R.R. Admin., Michael F. Hertz, Tracy J. Whitaker, Alan E. Kleinburd, U.S. Dept. of Justice, Washington, D.C., for U.S.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

The Trustee of The Railway Reorganization Estate, Inc., f/k/a Delaware and Hudson Railway Company (D & H), has proposed what in essence is a compromise plan of liquidation. That plan represents a series of settlements with numerous types of claimants. The United States has not compromised its claim. It asserts and the Trustee disputes that it has a lien on all of the cash in the estate based upon the terms of its indenture. This issue of the declaratory judgment action before the court on cross-motions for summary judgment requires a determination before proceeding to a confirmation hearing on the proposed plan.

## I. Introduction

The Trustee of the D & H, Francis P. DiCello, brought this adversary action seeking a declaratory judgment or, in the alternative, a determination that the Defen-

dant's "springing liens" are the product of unenforceable *ipso facto* clauses. 11 U.S.C. §§ 363(*l*), 541(c)(1)(B). Five of six original defendants have dropped out of the proceeding after reaching a global settlement with the Trustee; the United States alone has not compromised its claim. For the reasons that follow, the Trustee's motion must be granted.

## II. Background

At issue are the terms of a General Mortgage Supplemental Indenture (Indenture) executed January 4, 1984, to secure the United States as the holder of two notes: the Section 211 Contingency Note, with an aggregate principal of approximately sixty-three million dollars and the Section 511 Contingency Note with an aggregate principal of approximately twelve million dollars.

The 1984 Indenture modified an earlier mortgage executed in 1976. The earlier mortgage was collateralized by much more of D & H's property. In 1981, Congress passed the Northeast Rail Service Act directing the Secretary of Transportation to release certain collateral of applicable railroads (the statute was tailored to D & H). 45 U.S.C. § 1112(c). For this reason, the second Indenture was executed to replace the 1976 Mortgage.

The second indenture divided the collateral into two classes: the "Mortgaged Properties" and the "Excepted Properties." The Mortgaged Properties, listed in the Granting Clause, consisted mainly of the railroad's operating assets, railroad lines and trackage rights. These immediately became subject to the United States' lien. The Excepted Properties were a hodge podge of remaining railroad assets and rights unrelated to the direct operations. The pertinent Excepted Properties at issue now are "all cash on hand or in banks, contracts … and accounts receivable … other than any of the foregoing which are specifically by the express provisions of this Indenture subjected or required to be subjected to the lien hereof" and "all … Noninterfering Rights, provided that the use of [the Rights] does not unreasonably

interfere with or adversely affect the use for railroad purposes of the surface of the earth … adjacent to such Non-interfering Rights." Indenture at 13. A non-interfering right was further defined as "any lease, easement, license, right, estate or interest granted or sold by the [D & H] in any real estate subject to the lien of this Indenture which does not have an adverse effect on the ability of the [D & H] to use such real estate for railroad purposes." *Id.* at 26.

Unlike the Mortgaged Properties, the Excepted Properties only became subject to the Indenture lien "upon the occurrence of an Event of Reinstatement." *Id.* at 21. An Event of Reinstatement was defined as: (1) the commencement of a bankruptcy, receivership or reorganization; or (2) a sale of substantially all of the Railroad Operating Assets; or (3) a liquidation, or adoption of a plan of liquidation. *Id.* at 63. Hence, the Trustee's coining of the term "springing-lien": upon an Event of Reinstatement, the Government's lien would spring on to the Excepted Properties.

The collateral the United States alleges is subject to its springing lien as a result of the bankruptcy is several post-petition fiber optic easement agreements, the proceeds thereof and the proceeds of pre-petition accounts receivable (collectively "proceeds").

## III. Analysis

The Trustee's complaint seeks relief on four counts. Count One seeks a declaratory judgment or determination that the Event of Reinstatement clause purporting to activate the United States' springing lien upon the filing of a bankruptcy petition is an invalid *ipso facto* clause under sections 363(*l*) and 541(c)(1)(B). Count Two seeks a determination that the liens are invalid under New York state law because they did not attach pre-petition and automatic stay prevents attachment post-petition. Counts Three and Four seek a declaration that the proceeds are not § 363(a) cash collateral because the liens on the underlying collateral are unenforceable in bankruptcy.

The United States first responds that the Trustee is barred by the Code's two-year statute of limitations on strong-arm actions. Second, that the Government's springing lien simply "became operative" on the filing of the bankruptcy petition; the lien relates back to the execution of the Indenture, rather than the petition date. In the alternative, if the springing liens are invalid under the Bankruptcy Code, they are validated by the later in time Northeast Rail Service Act of 1981, 45 U.S.C. § 1101 *et seq.* (NERSA) which directed the United States to release its security interest in the disputed properties. NERSA § 1164(c). Fourth, the defendant challenges the characterization of the fiber optic easements as Exempted Properties on the grounds that they are interfering rights. Finally, if the United States is correct that it has a springing lien on the fiber optic easements and accounts receivable, the proceeds are section 363(a) cash collateral.

The court must find for the Trustee on Count One (from which affirmative findings on Counts Three and Four logically follow) and does not reach the state law issue of Count Two. First, the section 546(a) statute of limitations is not applicable to this proceeding. Second, the easements and account receivables were defined as Excepted Properties under the Indenture, therefore they were initially exempt from the United States' lien. Any clause which purports to establish a lien upon a bankruptcy filing is unenforceable under the Code. 11 U.S.C. § 363(*l*); *Abbott Bank–Thedford v. Hanna (In re Hanna)*, 912 F.2d 945, 950 n. 8 (8th Cir.1990) (dicta). NERSA does not change that result even if Congress so intended; Congress does not have the authority to promulgate non-uniform Bankruptcy laws. *U.S. Const.* art. I, § 8, cl. 4. Finally, if the properties are not subject to the Government's indenture lien, the proceeds cannot be subject to a lien either. 11 U.S.C. §§ 363(a), 552(b); *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.)*, 723 F.2d 441, 445 (5th Cir.), *cert. denied*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984).

### A. The Statute of Limitations Defense

■ In its answer, the United States has affirmatively plead the statute of limitations. This issue must be addressed as a threshold matter; a finding for the defendant would divest this court of jurisdiction. *Martin v. First Nat'l Bank of Louisville (In re Butcher)*, 829 F.2d 596 (6th Cir. 1987), *cert. denied* 484 U.S. 1078, 108 S.Ct. 1058, 98 L.Ed.2d 1020 (1988).

■ The Code limits the amount of time the trustee has to bring an avoidance action: "[a]n action or proceeding under section 544, 545, 547, 548 or 553 of this title may not be commenced after the earlier of—(1) two years after the appointment of a trustee." 11 U.S.C. § 546(a). The section names only five specific code sections expressly. The issue is whether this is meant to be an exclusive listing, and if it is, whether the Trustee has in fact brought this action under section 544.

■ The court finds that the list is an exclusive one. A general canon of statutory construction is that the enumeration of specific statutory sections subject to a rule implies that the omitted sections are excluded from that rule's application. *Expressio unius est exclusio alterius. Cash Currency Exchange, Inc. v. Shine (Matter of Cash Currency Exchange, Inc.)*, 762 F.2d 542, 552 (7th Cir.), cert. denied sub nom. *Fryzel v. Cash Currency*, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985) (applying canon to § 109(b)(2)); *accord Magill v. Newman (Matter of Newman)*, 903 F.2d 1150, 1154 (7th Cir.1990) (applying maxim to § 541(a)(5)).

The Bankruptcy Code offers guidance on statutory construction problems. It specifically provides that the terms "includes" and "including" are not limiting. 11 U.S.C. § 102(3). Since the list of sections subject to the two-year statute of limitations is not set off by these terms, it may be assumed Congress meant the list to be exhaustive. *Cash Currency*, 762 F.2d at 552. *See also United States v. Ledlin (In re Mark Anthony Constr., Inc.)*, 886 F.2d 1101, 1106 (9th Cir.1989) (refusing to apply canon to

§ 503(b) because list began with "including").

The issue then becomes whether this is a disguised avoidance action under section 544, one of the expressly limited Code provisions. The court holds that it is not.

The Trustee brought a declaratory judgment action pursuant to Bankruptcy Rule 7001(9) seeking a determination that the *ipso facto* clause is unenforceable as a matter of law. 11 U.S.C. §§ 363(*l*), 541(c)(1)(B). This is the usual procedure under the Code. *E.g., In re Government Securities Corp.,* 111 B.R. 1007, 1009 (S.D.Fla.1990); *In re Wilson,* 97 B.R. 285, 285 (Bankr.W.D.Va.1989). In addition to suits for declaratory relief, such cases are also brought as turnover actions (*E.g. In re Lawson,* 67 B.R. 94, 95 (Bankr.M.D.Fla. 1986); *In re Brock,* 23 B.R. 998, 1000 (Bankr.D.D.C.1982)) and requests for relief from the automatic stay. *E.g. Century Bank at Broadway v. Peacock (In re Peacock),* 87 B.R. 657, 657 (Bankr.D.Colo.1988); *Balsley v. Farmers & Merchants Bank (In re Elliott),* 81 B.R. 460, 463 (Bankr.N.D.Ill. 1987) (finding no statute of limitations on a § 362(a) action).

■ In addition, courts have allowed the trustee to prosecute an action under state law when the trustee's avoidance action was time barred. *Schwartz v. Pierucci,* 60 B.R. 397, 399 (E.D.Pa.1986). This indicates that the section 546(a) limitations period is strictly construed as applicable only to the actions named. Courts will not look to the underlying nature of the proceeding.

Declaratory judgment and turnover actions and stay motions are fundamentally different from the strong arm actions brought to trump inadequately protected creditors of the estate. *See* King, 4 Collier on Bankruptcy, ¶ 544.01 (15th ed. 1991). These liens are unenforceable as a matter of law; no hypothetical perfected lien creditor is required to make them so.

### B. *The Springing Lien*

#### 1. *Ipso Facto* Clauses

■ The Trustee argues that the Government's springing lien is unenforceable as a matter of law because it was triggered by the bankruptcy filing under the Indenture's Event of Reinstatement clause. Under the Code, modification of a debtor's interest in property cannot be triggered by the filing of a bankruptcy petition and *"ipso facto"* clauses which purport to do so are unenforceable. 11 U.S.C. §§ 363(*l*), 541(c)(1)(B). In its defense, the Government responds with mutually exclusive arguments. The Event of Reinstatement clause is not an *ipso facto* clause because the interest arose when the Indenture Agreement was entered into, the operation of its lien was simply deferred to a later contingency. However, if the court finds that the clause is unenforceable under the Code, it may be justified under NERSA, the Act which directed the United States to release its security interest in the Excepted Properties under the 1976 Indenture and resulted in the execution of the second Indenture.

■ Clauses which purport to terminate, limit or otherwise modify a debtor's interest in its property upon the filing of a bankruptcy petition are unenforceable under the Code. 11 U.S.C. §§ 363(*l*), 365(e)(1), 541(c)(1)(B). Section 363(*l*) provides in pertinent part:

(1) Subject to the provisions of section 365, the trustee may use, sell, or lease property under subsection (b) or (c) of this section, or a plan under chapter 11, 12, or 13 of this title may provide for the use, sale, or lease of property, notwithstanding any provision in a contract, a lease, or applicable law that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title concerning the debtor, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects, or gives an option to effect, a forfeiture, modification, or termination of the debtor's interest in such property.

Not only are such clauses expressly unenforceable, but they contravene Code policy of providing debtors with a fresh start. *Century Bank at Broadway v. Peacock (In re Peacock),* 87 B.R. 657, 659 (Bankr.

D.Colo.1988). Prior to the 1978 Amendments, *ipso facto* clauses were enforceable. Bankruptcy Act § 70(b). Even so, courts used their equitable power to deny effect to such clauses if the equities did not favor enforcement. *Kopelman v. Halvajian (In the Matter of Triangle Laboratories, Inc.),* 663 F.2d 463, 469 (3d Cir.1981). Today courts continue to read the Code's *ipso facto* sections broadly to effectuate code policy and in recognition that "[b]ankruptcy matters are also inherently proceedings in equity." *General Motors Acceptance Corp. v. Rose (In the Matter of Rose),* 21 B.R. 272, 276 (Bankr.D.N.J.1982).

The Indenture purports to modify the debtor's interest in the Excepted Properties upon bankruptcy. These properties, exempt from the lien pre-petition, "shall immediately become subject to the lien of this Indenture" at filing. Indenture at 21. This is a bald modification of debtor's interest in the excepted properties. What was once owned free and clear is suddenly subject to a mortgage upon the filing of a bankruptcy petition. The *"ipso facto* clause in the [c]ontract thwarts the Debtor['s] fresh start provided under the code and imposes a penalty upon the Debtor[ ] for exercising [its] constitutional right to file bankruptcy." *Peacock,* 87 B.R. at 659.

The court finds the "springing lien" clause to be unenforceable as a matter of law under section 363(*l*). The legislative history on section 363(*l*) fully supports this result: its purpose was "to permit the trustee to use, sell or lease property notwithstanding certain bankruptcy or *ipso facto* clauses that terminate the debtor's interest in the property or that work a forfeiture or modification of that interest." S.Rep. No. 95–989, 95th Cong. 1st Sess. 57 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 346; reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5843, 6302. *See also Connolly v. Nuthatch Hill Assoc. (In re Manning),* 831 F.2d 205, 206 n. 2 (10th Cir.1987) (buy-out provisions of partnership agreement valid under § 363(*l*) because not conditioned on bankruptcy filing).

### 2. The Government's Pre–Petition Interest

The Government argues that its lien relates back to the execution of the Indenture; the Event of Reinstatement Clause simply actives an interest created four years earlier. The triggering event was permissible under section 546(b): "[t]he rights and powers of a trustee ... are subject to any generally applicable law that permits perfections of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection."

Section 546(b) provides a limited exception to post-petition lien perfection. 11 U.S.C. § 362(b)(3). The Court of Appeals for the Third Circuit has narrowly construed this safe-harbour provision, rejecting the theory "that Congress intended to protect 'quasi-liens' when it enacted § 546." *Equibank, N.A. v. Wheeling–Pittsburgh Steel Corp.,* 884 F.2d 80, 85 (3d Cir.1989). *Accord Makoroff v. City of Lockport, New York,* 916 F.2d 890 (3d Cir. 1990); *In re Parr Meadows Racing Ass'n, Inc.,* 880 F.2d 1540 (2d Cir.1989), *cert. denied* 493 U.S. 1058, 110 S.Ct. 869, 107 L.Ed.2d 953 (1990).

Whatever interest the United States had in the Excepted Properties, it was not a legally recognizable one under applicable law—either the Bankruptcy Code or New York state law. *Makoroff,* 916 F.2d at 892. The Third Circuit has stated that an interest under section 546(b) must be more than an abstract expectation; the creditor must have taken the appropriate affirmative steps to secure its position. *Id.* at 894.

### 3. NERSA

The Northeast Rail Service Act of 1981 ordered the Secretary to modify its security interest in D & H property. Section 1164(c)(1) provides in pertinent part: "the Secretary shall limit the interest of the United States in any debt of such a railroad to an interest which attaches to such debt in the event of bankruptcy or substantial sale, or liquidation of the assets of the railroad." 45 U.S.C. § 1112(c)(1) (1981). The Government relies on this language to argue that Congress meant to

overrule or create an exception to sections 363(*l*) and 541(c)(1).

Section 1164(c) of NERSA does not legitimize the Government's springing lien. An implied repeal of earlier legislation is strongly disfavored. *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 133, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974). Any legislative intent to repeal by implication must be "clear and manifest." *Watt v. Alaska*, 451 U.S. 259, 266–267, 101 S.Ct. 1673, 1677–1678, 68 L.Ed.2d 80 (1981) (*quoting Red Rock v. Henry*, 106 U.S. 596, 602, 27 L.Ed. 251 (1883)). *Accord In re of Lawaetz*, 728 F.2d 225, 229 (3d Cir.1984).

■ There is no evidence that Congress intended section 1164(c) to repeal the Bankruptcy Code's prohibition on *ipso facto* clauses by implication. If it did so intend, however, that section would be unconstitutional under the Bankruptcy Clause of the United States Constitution which prohibits non-uniform bankruptcy law. U.S. Const. art. I, § 8, cl. 4.

In *Railway Labor Executives' Ass'n v. Gibbons* the Supreme Court found a statute unconstitutional under the Bankruptcy Clause that applied "to only one regional bankrupt railroad." 455 U.S. 457, 470, 102 S.Ct. 1169, 1177, 71 L.Ed.2d 335 (1982). In doing so, the Court adopted a *per se* rule striking down any bankruptcy law which "applie[d] to only one debtor and can be enforced by the one bankruptcy court having jurisdiction over that debtor." *Id.* at 471, 102 S.Ct. at 1177.

The *ipso facto* provision of the Indenture would only be enforceable if section 1164(c) of NERSA, promulgated specifically for D & H, was meant to repeal the Bankruptcy Code's prohibition on *ipso facto* clauses as to D & H alone. This is unconstitutional under *Gibbons*. *Id.*

### 4. Classification of the Fiber Optic Easements

While the accounts receivable are defined Excepted Properties, the fiber optic easements are only excepted if they are "Non–Interfering Rights." Indenture at 13. The United States challenges this definition for the first time in its cross-motion for summary judgment, no doubt hoping to raise an issue of material fact.

At an earlier proceeding, this court found the easements to be Non–Interfering Rights. *See* Order dated January 11, 1989, Denying Motion to Escrow Proceeds of Fiber Optic Easement Agreements With American Telephone and Telegraph Company, ¶ 3. Although this Order was vacated on appeal on procedural grounds (Order of Judge Murray F. Schwartz dated October 2, 1989), that holding was not challenged. Therefore, the court sees no reason to revisit the earlier ruling.

### C. *The Cash Collateral*

■ The United States claims the Fiber Optic proceeds and accounts receivable proceeds are cash collateral: "cash ... whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds ... of property subject to a security interest as provided in section 552(b)." 11 U.S.C. § 363(a). However, if the lien on the underlying collateral is unenforceable, the creditor cannot claim an interest in the proceeds. 11 U.S.C. 552(b); *Wolters Village, Ltd. v. Village Properties Ltd. (In the Matter of Village Properties)*, 723 F.2d 441, 445 (5th Cir.), *cert. denied*, 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984). Since the court holds that the United States does not hold an enforceable security interest or mortgage in the fiber optic easements and accounts receivables, the United States does not have an interest in the proceeds thereof. The proceeds are not section 363(a) cash collateral.

### IV. Conclusion

In accordance with the foregoing, the Trustee's motion for summary judgment must be granted as to Counts One, Three and Four of his complaint.