**In the Matter of PETER J. SCHMITT CO., INC., et al., Debtors.**

**BEATRICE CHEESE, INC., et al., Plaintiffs,**

**v.**

**PETER J. SCHMITT CO., INC., et al., Defendants.**

**Bankruptcy Nos. 92–694 to 92–699. Adv. Nos. A–93–8 to A–93–10, A–93– 15 to A–93–21 and A–93–62.**

United States Bankruptcy Court, D. Delaware.

April 16, 1993.

See also 150 B.R. 556.

John Wm. Butler, Jr., N. Lynn Hiestand, J. Eric Ivester, Nicholas L. Giampietro,

Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, Anthony W. Clark, Gregg M. Galardi, Mark D. Collins, Skadden, Arps, Slate, Meagher & Flom, Wilmington, DE, for debtors/defendants.

James M. Lawniczak, T. David Mitchell, Calfee, Halter & Griswold, Cleveland, OH, Michael B. Joseph, Ferry, Joseph & Fink, P.A., Wilmington, DE, for Fresh Mark, Inc., J.H. Routh Packing Co., Carolina Turkeys, Cuddy Farms, Inc., Green Bay Dressed Beef, Inc., The Smithfield Packing Co., Inc., and Thorn Apple Valley, Inc.

William J. Brown, Paul K. Stecker, Arthur J. Bronson, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, NY, S. David Peress, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Marine Midland Bank, N.A. (Individually and as Agent), Natwest USA Credit Corp., Mellon Bank, N.A., The Bank of New York, Society National Bank (successor by merger to Ameritrust Company National Association) and Fleet Bank of New York (formerly known as Norstar Bank, N.A.).

Robert J. Bothe, James J. Niemeier, McGrath, North, Mullin & Kratz, P.C., Omaha, NE, Joanne Ceballos, Potter Anderson & Corroon, Wilmington, DE, for Beatrice Cheese, Inc., ConAgra, Inc. and Swift–Eckrich, Inc.

Laurie Selber Silverstein, Potter Anderson & Corroon, Wilmington, DE, for John Morrell & Co.

## MEMORANDUM OPINION AND ORDER

HELEN S. BALICK, Bankruptcy Judge.

In this adversary proceeding, plaintiff Beatrice Cheese, Inc. moves for summary judgment on its complaint to determine the validity of a lien. Defendants Peter J. Schmitt Co., Inc. and Marine Midland Bank, N.A. cross-move for summary judgment.[1] Ten other adversary proceedings initiated by similarly situated plaintiffs have been consolidated with this proceeding for the purposes of these motions. The parties agree this is a core proceeding. 28 U.S.C. § 157(b).

After full consideration of the extensive briefing filed in connection with these consolidated proceedings,[2] as well as the briefing in a related matter in Schmitt's Chapter 11 proceedings, the court concludes Schmitt's motion should be considered first. This court's decision on that motion completely disposes of Beatrice's requests for relief in this adversary proceeding.

### I. Legal Standard

On a motion for summary judgment, the record consists of the pleadings, admissions and affidavits of the parties. In considering Schmitt's motion, the court will grant summary judgment only if there is no genuine issue of material fact and Schmitt is entitled to judgment as a matter of law. Bankr.R. 7056; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–249, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986). Applying this standard, the following facts are appropriate to consider and sufficient to discuss the legal issues.

### II. Facts

Prior to the filing of its Chapter 11 petition, Schmitt was a wholesale food distributor in the Northeastern United States. Schmitt maintained three warehouse and distribution facilities for its grocery products. On and after May 4, 1992, pursuant to several contracts, Beatrice sold and delivered to Schmitt at its facility in Mahoning County, Ohio various food products, including low sodium/fat mozzarella cheese (shredded), and non-dairy aerosol Reddi–Whip (in both strawberry and chocolate flavors). Schmitt owes a balance of $63,959.69 for these delivered products.

---

1. Schmitt's motion also seeks legal rulings on issues raised by its counterclaim. Those legal issues are discussed herein only to the extent necessary to resolve the cross-motions for summary judgment on the relief requested by Beatrice in its complaint.

2. Certain of the consolidated plaintiffs have moved to strike a portion of Schmitt's briefing and for sanctions. That motion will be considered in a subsequent and separate decision by this court.

Schmitt filed its Chapter 11 petition in this court on May 29, 1992. On June 30, 1992, in an attempt to perfect a lien pursuant to an Ohio agricultural product lien statute, Beatrice filed an affidavit relating to these food products in the appropriate Ohio Recorder's office.

In each of the other consolidated adversaries, the facts differ only in the food products delivered, the pre-petition date of delivery and the post-petition date of the filing of the affidavit. Fresh Mark, Inc., another of the plaintiffs, notes that it filed its Ohio affidavits on May 29, the petition date. However, the time-stamp on those affidavits is after 3:00 p.m. Schmitt's Chapter 11 petition was clocked in at 8:02 a.m. Thus there are no material differences in the facts with respect to Fresh Mark and the other consolidated plaintiffs.

### III. *Discussion*

Beatrice seeks a declaration that it has, pursuant to the Ohio agricultural product lien statute, a first priority interest in the proceeds of the food products, and requests this court impose a constructive trust on those proceeds in its favor. Schmitt's answer and counterclaim seek, among many other things, avoidance of this statutory lien pursuant to 11 U.S.C. § 545.

Schmitt's motion for summary judgment first assumes as a matter of fact and law that pursuant to the Ohio lien statute, a contingent lien arose in favor of Beatrice when Schmitt first received the food products. Nonetheless, Schmitt argues that 11 U.S.C. § 545 operates to avoid that lien. Schmitt's argument raises two issues of law. The first is a bankruptcy law issue relating to sections 545 and 546 of the Bankruptcy Code. The second is an Ohio issue of law relating to the Ohio agricultural product lien statute.

#### A. *The Scope of Section 545(2)*

Title 11, section 545(2) states:

The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—

\*       \*       \*       \*       \*       \*

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists.

Section 545(2) must be read in connection with section 546(b):

The rights and powers of a trustee under section[ ] ... 545 ... of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection.

As the legislative history to section 546 points out:

The trustee's rights and powers under certain of the avoiding powers are limited by section 546.... The rights granted to a creditor under this subsection prevail over the trustee only if [the creditor has perfected its interest in property post-petition], *and that perfection relates back to a date that is before the commencement of the case.*

\*       \*       \*       \*       \*       \*

Such perfection would then be able to defeat a hypothetical judicial lien creditor on the date of the filing of the petition. The purpose of the subsection is to protect, in spite of the surprise intervention of bankruptcy petition, those whom State law protects by allowing them to perfect their liens or interests *as of an effective date that is earlier than the date of perfection.*

H.R.Rep. No. 595, 95th Cong., 1st Sess., at 371 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6327 (emphasis added).

The parties' first legal dispute concerns the combined effect of these two sections of the Bankruptcy Code. Beatrice argues section 546(b) vitiates the avoidance power of section 545(2) when Beatrice perfects its lien post-petition. Schmitt responds that the avoidance power is lost only if Beatrice's post-petition perfection relates back to a date pre-petition. As should be clear from the emphasized language of the above-quoted legislative history, Schmitt is correct.

Fresh Mark cites *Lincoln Sav. Bank FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Assoc., Inc.)*, 880 F.2d 1540, 1546 (2d Cir.1989) in support of Beatrice's position. That case is irrelevant. As the case name suggests, it dealt with a lien dispute between two creditors, and had nothing to do with the operation of section 545.

Beatrice argues that *Makoroff v. City of Lockport, New York*, 916 F.2d 890, 892 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1640, 113 L.Ed.2d 735 (1991) supports its legal position. The language Beatrice has quoted from that opinion is out of context. The *Makoroff* case, as succinctly stated by its author Judge Cowen, dealt with a related, but different question of "whether the creation of post-petition liens for unpaid city and county real property taxes on a bankrupt estate violate[d] the automatic stay provision of 11 U.S.C. § 362(a)(4)." *Id.* at 890. Indeed, in ruling on that question, the Third Circuit acknowledged that a lien perfected post-petition could trump prior liens only if the perfection related back to a pre-petition period. *Id.* at 890, 893–94. *Makoroff* is thus in full accord with well-settled law that Schmitt may avoid Beatrice's agricultural product lien unless, as a matter of law, Beatrice's post-petition act to attempt to perfect its lien relates back to a date pre-petition. *See generally* 4 *Collier on Bankruptcy* ¶ 545.-04, at 545–21, ¶ 546.01, at 546–5, ¶ 546.03, at 546–13 n. 2b (1989) (collecting cases).

### B. *The Ohio agricultural product lien does not relate back.*

■ Whether Beatrice's post-petition perfection does relate back is a question of Ohio law, and specifically, of the Ohio agricultural product lien statute, which is set out at Ohio Rev.Code §§ 1311.55–57 (Anderson 1991). The parties dispute whether perfection under that statute relates back to an earlier date.

Section 1311.55 states in relevant part:
(B) An agricultural producer who delivers an agricultural product under [a contract] to an agricultural product handler, or an agricultural product handler who delivers an agricultural product under [a contract] to another agricultural product handler, has a lien to secure the payment for all of the agricultural product delivered under that contract. The lien attaches to the product, whether in a raw or processed condition, while in the possession of the agricultural product handler, and to the proceeds of the sale of the agricultural product. The lien attaches from the date of delivery of the agricultural product to the handler, or if there is a series of deliveries under the contract, from the date of the first delivery. The lien is contingent until the producer or handler complies with section 1311.56 of the Revised Code.

(C) The lien on an agricultural product covers the contract price agreed upon, or when there is no agreed price at the time of delivery, the value of the agricultural product as determined by the "market news service" of the Ohio department of agriculture on the date the agricultural producer or handler files the affidavit permitted under section 1311.56 of the Revised Code.

Section 1311.56(A) states:
(A) The agricultural producer or handler may perfect his lien by recording, in the office of the county recorder in the county where the agricultural product was delivered to the agricultural product handler, an affidavit....

This section also specifies the informational contents of the affidavit.

Finally, section 1311.57 states:
(A) An agricultural producer or handler who perfects his lien within sixty days after the date of delivery, or first delivery if there was a series of deliveries under the contract, of the agricultural product has priority over secured creditors who have security interests under Chapter 1309. of the Revised Code, and has priority over all other liens, claims, or encumbrances.... If several liens are obtained by several persons on the same agricultural product, the person who perfects his lien first has priority

over all other agricultural product lien-holders.[3]

\* \* \* \* \* \*

(C) Notwithstanding division (B) of this section, an agricultural product lien shall remain in effect throughout any insolvency proceedings involving the agricultural product handler named in the Affidavit.

Here, Beatrice filed its affidavit within 60 days in compliance with sections 1311.56 and 1311.57, but after the commencement of Schmitt's Chapter 11 proceedings. The court must determine whether perfection under this Ohio statute "relates back" and creates a perfected lien as of the date of delivery (as Beatrice argues), or whether perfection creates a perfected lien as of the date of perfection (as Schmitt argues). The parties have not cited any Ohio case-law determining this issue. Schmitt avers this is an issue of first impression.

■■■ As a threshold matter, interpretation of this statute is also governed by Ohio law. Under Ohio law, unambiguous statutory language speaks for itself. Only when the language is ambiguous may legislative history be employed to determine the meaning of the language. Ohio Rev.Code § 1.49 (Anderson 1991); *State ex rel Cunningham v. Industrial Comm'n.*, 30 Ohio St.3d 73, 506 N.E.2d 1179, 1181–82 (1987) (per curiam). The court's function is to give effect to the words used, not to delete words used or to insert words not used. *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 524 N.E.2d 441, 442 (1988). A statute should be construed to give effect to every part of it. *State of Ohio v. Arnold*, 61 Ohio St.3d 175, 573 N.E.2d 1079, 1082 (1991).

■■■ Initially, the court notes that the Ohio lien statute does not use express language that would relate the date of perfection back to the date of delivery. In consideration of the above Ohio rules of construction, this absence of express language is a strong indication that the statute should not be construed to relate back the date of perfection. *Accord State of Con-necticut v. Leach (In re Leach)*, 15 B.R. 1005, 1009–10 (Bankr.D.Conn.1981).

Moreover, consideration of each of the individual components of this statute focus upon the date of perfection as the critical date. First, section 1311.55(B) states that the "lien is contingent until the producer or handler complies with section 1311.56" (the section requiring filing of an affidavit). Second, section 1311.55(C) focuses on the date of filing as the date critical for determining the value of the lien. Third, the last sentence of the first paragraph of section 1311.57(A) expressly refers to the date a person perfects his lien as the critical date to evaluate priorities among several persons who have obtained liens upon the same agricultural product.

The existence of these provisions argue against the adoption of Beatrice's asserted construction which would be contrary to the Ohio rules of construction.

Beatrice relies upon a portion of section 1311.57(A) which states "[a]n agricultural producer ... who perfects his lien within sixty days ... has priority over all other liens, claims, or encumbrances." Beatrice argues this language supports its view that the date of delivery determines priority. The court disagrees. The quoted language establishes the level of priority as compared to other liens and interests. This language does not by itself resolve the question of *when* a lien is considered perfected—the very question this court must resolve. If anything, the language supports the conclusion that the date of perfection determines priority.

Beatrice also argues the effect of the construction Schmitt asserts would vitiate the lien the Ohio legislature intended to establish and to survive a bankruptcy proceeding, and that this legal result is both unintended and unfair. Initially, the court notes that section 545 has no operation when the agricultural producer files its affidavit pre-petition. More importantly, Beatrice's argument merely recognizes the supremacy of Federal law over State law.

---

**3.** Chapter 1309 is Ohio's version of Article 9 of the Uniform Commercial Code.

Fresh Mark relies upon *In re U.S. Elec., Inc.*, 123 B.R. 262 (Bankr.S.D.Ohio 1990) for the proposition that a lien statute need not expressly use relation back language to relate back. The court in that case held an Ohio mechanic's lien statute for private improvements did relate back. That statute, however, included a section (quoted by the court) stating "[Mechanic's liens] are effective from *the date the first labor is performed* ..., and shall continue for six years after an affidavit is filed...." *Id.* at 264 (emphasis added). Indeed, this court's own computer-assisted research indicates that while the Ohio statute creating mechanic's lien for private improvements provides for an filing of an affidavit, the statute does not contain any language defining perfection or relating the act of filing to the act of perfection. Therefore, it would be hard to argue that the mechanic's lien was perfected at any date other than the date the first labor was performed.

The language of the mechanic's lien statute sharply contrasts with the statute here, which creates a "contingent lien" that must be "perfect[ed]" by the filing of an affidavit. *See generally* Ohio Rev.Code §§ 1311.55–57 (Anderson 1991). Thus, Fresh Mark's argument actually supports Schmitt's position. The court finds the other arguments of Beatrice and the other plaintiffs in support of Beatrice's position also without merit.

### C. *Beatrice's Lien's are avoidable pursuant to 11 U.S.C. § 545.*

For all these reasons, the court concludes that the Ohio agricultural product lien is perfected on the date of perfection and that the perfection does not relate back to an earlier date. Schmitt may avoid Beatrice's lien pursuant to 11 U.S.C. § 545.

Schmitt has also argued that it may avoid Beatrice's lien pursuant to § 545 because the lien was not enforceable against a bona fide purchaser on the date Schmitt filed its Chapter 11 bankruptcy (the enforceability issue). The court agrees, for reasons similar to those discussed in section III.B.

Further discussion of the enforceability issue is not necessary. The court has already fully analyzed whether Beatrice's lien was perfected by the date Schmitt's Chapter 11 proceedings commenced, and has held as a matter of law that the lien was not. The enforceability issue merely provides an alternative standard the debtor may meet to avoid a lien, *e.g.*, *In re Pierce*, 809 F.2d 1356, 1359 (8th Cir.1987), and thus is not necessary to address to grant Schmitt's motion.

Without any lien, Beatrice has the status of an unsecured creditor and has no grounds to pursue the relief requested in its complaint. The other legal issues Schmitt raises in support of its summary judgment motion need not be considered.

### IV. *The Other Summary Judgment Motions*

Since Marine Midland has adopted all of the arguments of Schmitt in support of *its* motion for summary judgment, the court will grant that motion as well. The court's Opinion herein rejects one of the essential legal elements of Beatrice's argument in support of its motion for summary judgment. Therefore, that motion will be denied.

### V. *Conclusion*

An order in accordance with this Opinion is attached. The material facts underlying this Opinion are identical in each of the other consolidated proceedings, and are also undisputed. The court shall enter a similar order with respect to each summary judgment motion in each of those proceedings.

### ORDER

AND NOW, April 16, 1993, for the reasons stated in the attached Memorandum Opinion,

IT IS ORDERED THAT:

1. The motion of Peter J. Schmitt Co., Inc. for summary judgment is **GRANTED** upon the affirmative relief Beatrice Cheese, Inc. seeks.

2. The motion of Marine Midland, N.A. for summary judgment is **GRANTED.**

3. The motion of Beatrice Cheese, Inc. for summary judgment is **DENIED.**

4. Beatrice Cheese, Inc.'s complaint is dismissed with prejudice.